**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Tel.:    (213) 401-4100
Fax:     (213) 401-0311
Email:   mdb@kuzykclassactions.com

**DENLEA & CARTON LLP**
James R. Denlea *(pro hac vice pending)*
Jeffrey I. Carton *(pro hac vice pending)*
Craig M. Cepler (*pro hac vice*)
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
*Email:      jdenlea@denleacarton.com*
*Email:      jcarton@denleacarton.com*
*Email:      ccepler@denleacarton.com*
Tel.:  (914) 331-0100
Fax:  (914) 331-0105

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT CASTELLANO, on behalf of himself and all others similarly situated,<br><br>     **Plaintiff,**<br><br>  **v.**<br><br>**IGLOO PRODUCTS CORP.,**<br><br>     **Defendant.** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Robert Castellano, on behalf of himself and all others similarly situated ("Plaintiff"), by and through his undersigned counsel, Kuzyk Law, LLP, and Denlea & Carton LLP, states as and for his Complaint against defendant Igloo Products Corp. ("Defendant"), as follows:

## NATURE OF THE ACTION

1. A cooler is a simple product. It is a transportable and insulated box that keeps food cool and fresh. In doing so, it allows its user to enjoy an outing, whether a picnic, a day at the beach, a tailgate or a potluck meal.

2. Reasonable consumers expect that a simple product like a cooler will cause them no harm. After all, what harm can a properly insulated box cause?

3. Defendant, however, has betrayed consumers' reasonable expectations.

4. Defendant's line of 90 Quart Flip and Tow Rolling coolers, manufactured prior to January 2024 (and sold through January 2025) (the "Product"), defy all expectations because they are inherently and unforeseeably dangerous. The Product is a cooler with two wheels and two handles to allow users to easily pull it or carry it:



5. The tow handle on the Product, however, can pinch consumers' fingertips possibly leading to amputation and creating a crushing hazard (the "Defect"). In fact,

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

there are numerous substantiated reports of fingertip amputations, bone fractures and lacerations.

6. On its website, Defendant fails to provide any warning to customers about the possible danger the Products pose to consumers.

7. Unfortunately, all consumers who purchased the Products for between $80 and $140 (depending on the specific model) received a defective and unusable cooler that suffers from an unforeseeable, serious and dangerous safety defect and is subject to a major national recall.

8. The Defect is the subject matter of Defendant's voluntary recall of the Products on February 13, 2025 (the "Recall").  The Recall affects more than one million Igloo 90-quart Flip & Tow Rolling Coolers in the United States (as well as another 60,000 in Canada and Mexico).

9. The remedy Defendant offers consumers who receive notice of the Recall is, however, wholly inadequate.  Rather than actually recalling or replacing the Products, Defendant provides affected owners who contact Defendant with "a free replacement handle."  While awaiting this replacement handle, consumers are advised to "immediately stop using the recalled coolers."

10. The Recall notice says nothing about returning the Products or receiving a refund.

11. The Recall fails because: (i) it is not designed to reach the majority of consumers who purchased the Product; (ii) it requires consumers to install the repair themselves, as laypersons, with no knowledge of the design of the handle and no ability to verify with a professional that the repair was done correctly; (iii) it does not include a recall of the entire Product (only a part, which consumers must replace themselves); and (iv) it provides consumers with no monetary remedy whatsoever or opportunity to replace the cooler even though they purchased dangerous and defective Products for a premium price.

12.     Defendant expressly and impliedly warrants on its website that its products, including the Products, are "free from defects in material or workmanship under normal use and service."

13.     Plaintiff and Class Members relied on Defendant's statements on its website and its reputation for quality to support their expectations that the Products were high-quality, safe, defect-free and fit for their intended use, and would safely transport their food when they purchased them.

14.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received were coolers that presented significant hazards to their hands.

15.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and reputation.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and the Class Members suffered an injury in the amount of the premium paid.

16.     Accordingly, Defendant breached the express and implied warranties granted to consumers and violated numerous California laws meant to protect consumers.

17.     Plaintiff brings this action against Defendant on behalf of himself and the putative Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## THE PARTIES

18.     Plaintiff Robert Castellano is an individual who is domiciled in San Pedro, California.

19.     Defendant Igloo Products Corp. is a Texas corporation with its principal place of business in the State of Texas.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

21.     This Court may exercise jurisdiction over Defendant because it has sufficient minimum contacts in California and purposely avails itself of the markets within the State of California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## FACTUAL BACKGROUND

### I.     The Products

23.     Defendant is a well-established corporation known for manufacturing and distributing the Products and similar products for keeping foods cool while transporting them.

24.     Among Defendant's product lines is a series of 90-quart "flip and tow" rolling coolers, made in a variety of colors and distinguishing details.

25.     Common to all Products in this line – which line is the subject of the Recall – are two wheels with a towing handle on the side opposite the wheels.  In addition, there is a carrying handle over the wheels to allow for easier lifting.

26.     Shown below are various models included among the Products.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12



13  *Figure 1*: Igloo Latitude 90-Quart Roller Cooler (Model #34547)

14
15
16
17
18
19
20
21
22
23
24
25
26



27  *Figure 2*: Igloo 90-quart Maxcold Latitude Flip and Tow Wheeled Cooler (Model
28  #34841)



*Figure 3*: Igloo MaxCold Latitude Cooler 90 qt. Blue/Gray (Model #34818)

## II.    The Product Is Dangerous

27.    On February 13, 2025, Defendant issued the voluntary Recall for the Products.

28.    According to the Safety Alert announcing the Recall, the Recall was initiated because "[t]he tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards." (*See* <u>Exhibit A</u>.)

29.    The Recall included the Products, that is Igloo 90 Qt. Flip & Tow Rolling Coolers, manufactured prior to January 2024 that feature a "tow handle."

30.    The specific models included in the Recall were:

| Model/SKU # | DESCRIPTION | DATE CODES |
|---|---|---|
| 34143 | LATITUDE 90 ROLLER | 07/2021 – 12/2023 |
| 27019 | MAXCOLD LATITUDE 90 ROLLER POWERADE | 11/2020 – 12/2023 |
| 34202 | MAXCOLD 90 ROLLER | 07/2021 – 12/2023 |

| Model/SKU # | DESCRIPTION | DATE CODES |
|---|---|---|
| 34241 | LATITUDE 90 ROLLER MAXCOLD | 07/2021 – 12/2023 |
| 34389 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34424 | LATITUDE 90 ROLLER | 10/2019 – 12/2023 |
| 34488 | LATITUDE 90 ROLLER MAXCOLD | 03/2019 – 12/2023 |
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90 ROLLER MAXCOLD | 11/2019 – 12/2023 |
| 34608 | LATITUDE 90 ROLLER MAXCOLD | 12/2019 – 12/2023 |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER MAXCOLD | 01/2020 – 12/2023 |
| 34689 | MAXCOLD LATITUDE 90 ROLLER | 03/2020 – 12/2023 |
| 34724 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34734 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

| Model/SKU # | DESCRIPTION | DATE CODES |
|---|---|---|
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER | 10/2020 – 12/2023 |
| 34789 | MAXCOLD LATITUDE 90 ROLLER | 11/2020 – 12/2023 |
| 34799 | LATITUDE 90 ROLLER | 12/2020 – 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 – 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 – 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 – 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 – 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 – 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |

| Model/SKU # | DESCRIPTION | DATE CODES |
|---|---|---|
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 ROLLER | 08/2018 – 12/2023 |
| 49938 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 50680 | MAXCOLD LATITUDE 90 QUART | 09/2023 – 12/2023 |

31.    The Safety Alert confirmed that Defendant had "received 12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations."

32.    The Products that were subject of the Recall had been sold at "Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140."

33.    The Safety Alert advised consumers to "immediately stop using the recalled coolers and contact Igloo for a free replacement handle."

34.    Confoundingly, the replacement handle was to be installed by the consumer without any professional assistance.

35.    Defendant provided no other support to consumers who purchased these unreasonably dangerous Products.

### III.   Plaintiff Purchases Product

36.   Plaintiff is a 55-year-old resident of San Pedro, California.

37.   On or about October 22, 2022, Plaintiff purchased a MaxCold Latitude 90 Roller Cooler (the "Cooler") from a local Costco, shown below:



38.   The Cooler was manufactured in February 2022.

39.   He intended to use the Cooler primarily for camping trips with his family.

40.   He selected the Cooler because of its transportability, specifically the convenience of its wheels and handles.  He also appreciated that the insulation was conducive to multi-day camping trips.

41.   Plaintiff was also aware of Defendant's reputation for safe and quality coolers.

42.   Plaintiff's experience with the Cooler was fine until he went on a camping trip with his then-17-year-old son in August 2024.

43.   While his son was moving the Cooler, the handle suddenly snapped back and pinched his fingers.

44.   Although his son did not suffer any injuries, Plaintiff was concerned

about the Cooler.

45.     Given his concerns about the safety of the Cooler, Plaintiff and his family have stopped using the Cooler, leaving it in his garage.

46.     It therefore remains an expensive and dangerous box with no use or value.

47.     Several months later, Plaintiff received notice of the Recall, for which he applied.

48.     Plaintiff recently received the replacement handle.  In the Warning that accompanied the replacement handle, Defendant stated: "DO NOT USE COOLER UNTIL YOU REPLACE HANDLE.  MOVING PARTS CAN CRUSH OR EVEN AMPUTATE FINGERTIPS."

49.     The Warning further advised customers: "Two potential pinch points at different locations where the Recalled Two Handle meets the cooler pose fingertip amputation and crushing hazards if fingers are caught in these points when the cooler or handle is moved."

50.     The Warning continues:

> A redesigned tow handle ("New Tow Handle") was implemented by Igloo in 2024.  The New Tow Handle addresses both pinch point risks.  The New Tow Handle contains increased space near the hinge along with enhanced plastic ribbing. . . .
>
> IF YOU HAVE A 90 QT COOLER WITH A RECALLED TOW HANDLE, YOU MUST REPLACE THE RECALLED TOW HANDLE WITH THE NEW TOW HANDLE PER THE INSTRUCTIONS ON THE FOLLOWING PAGE.

51.     Nonetheless, Plaintiff is hesitant to avail himself of the repair kit provided as part of the Recall.

52.     Plaintiff does not feel confident that he can "fix" the Cooler to prevent any injuries, nor does the Recall resolve the concerns he has about the Product given Defendant's failure to warn him of the dangers that the handle causes.

53.     Plaintiff was not aware of the Defect or any other defects with the Cooler at the time he purchased it.

54.     Had Plaintiff understood the dangers posed by the Cooler, he would not have purchased it.

55.     Therefore, the only appropriate remedy for Plaintiff – and all other members of the Class – is a refund for the Product.

## NO ADEQUATE REMEDY AT LAW

56.     Plaintiff and Members of the Class are entitled to equitable relief as no adequate remedy at law exists.

57.     <u>Broader Statutes of Limitations</u>.  The statutes of limitations for the causes of action pled herein vary.  The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

58.     <u>Broader Scope of Conduct</u>.  Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

59.     <u>Injunctive Relief to Cease Misconduct and Dispel Misperception</u>.  Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the safety of the Products on its website and through its warranty.  Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

60.     Further, injunctive relief, in the form of affirmative disclosures are necessary to dispel the public misperception about the Product that has resulted from

years of Defendant's unfair, fraudulent and unlawful marketing efforts. Such disclosures include, but are not limited to, publicly disseminated statements that the Product's challenged representations in the online warranty are not true and provide accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's label concerning the Product's true nature.

61. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

62. Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action, and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified Class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS DEFINITION AND ALLEGATIONS

63. Plaintiff brings this action individually and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the members of the following proposed Class (the "Class"):

> During the fullest period allowed by law, all persons who purchased the Products in the State of California for personal use and not resale.

64.    Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

65.    Plaintiff reserves the right to amend the Class definition as necessary, including but not limited to include additional products made by Defendant with the same Defect and/or other products manufactured by Defendant with the common Defect but bearing different brand names.

66.    **Numerosity:** The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands of people throughout the state of California, as 1,000,000 Products were reportedly sold nationwide.  The number of Class Members can be determined by sales information and other records.  Moreover, joinder of all potential Class Members is not practical given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

67.    **Typicality:** The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased Products that were manufactured, marketed, advertised, distributed, and sold by Defendant.  Plaintiff, like all Class Members, was damaged by Defendant's uniform misconduct in that, *inter alia*, he has incurred or will continue to incur damage as a result of purchasing an unreasonably dangerous cooler and of overpaying for a Product that was manufactured with the Defect, which makes it unusable, inherently dangerous and not fit for its intended use, and which is subject to an inadequate Recall.

68.    Further, the factual basis of Defendant's misconduct is common to all Class Members because Defendant engaged in systematic fraudulent behavior that was deliberate, and results in the same injury to all Class Members.  Plaintiff is

advancing the same claims and legal theories on behalf of himself and all members of the Class he seeks to represent.

69.    **Commonality:** Common questions of law and fact exist as to all Members of the Class.  These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class.  Such common legal or factual questions include, *inter alia*:

a.    Whether the Products are defective;

b.    Whether the Products are defectively designed and/or manufactured;

c.    Whether Defendant knew or should have known about the Defect in its Products prior to distributing and selling them to Plaintiff and Class Members;

d.    Whether Defendant knew or should have known about the Defect in its Products after distributing and selling them to Plaintiff and Class Members;

e.    Whether Defendant knew or should have known about the Defect in its Products prior to issuing the Recall;

f.    Whether Defendant concealed from and/or failed to disclose to Plaintiff and Class Members that the Products contained a uniform Defect;

g.    Whether Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the Defect, were not safe or suitable for consumers and could and have caused severe injuries;

h.    Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Products containing the Defect;

i.    Whether Defendant omitted or failed to disclose material information to Plaintiff and Class Members regarding the Products;

j.    Whether Defendant concealed from and/or failed to disclose to Plaintiff and Class Members that the Products are not safe and not suitable for infant sleep;

k.    Whether Defendant engaged in false or misleading advertising by selling, packaging and/or marketing the Products;

l.    Whether Defendant has violated consumer protection statutes;

m.    Whether Defendant breached the implied warranty of merchantability;

n.    Whether Defendant breached express warranties relating to the Products;

o.    Whether Plaintiff and Class Members either paid a premium for the Products that they would not have paid but for their false representations

or would not have purchased them at all;

p.  Whether Plaintiff and Class Members have been injured by Defendant's misconduct, and the proper measure of their losses as a result of those injuries;

q.  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages; and

r.  Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief, including enjoining Defendant from selling and marketing the Products containing the Defect.

70.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and other Class Members.  Similar or identical statutory violations, common law wrongs, business practices, and injuries are involved.  Individual questions – if any – pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

71.  **Adequate Representation:** Plaintiff will fairly and adequately protect the interests of Class Members.  He has no interests antagonistic to those of Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer products, product defects, misrepresentation, mislabeling, and class actions, and Plaintiff intends to prosecute this Action vigorously.

72.  **Predominance and Superiority:** Plaintiff and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the Products and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without

remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

73.    The claims presented in this case predominate over any questions of law or fact affecting individual Class Members.

74.    Plaintiff knows of no difficulty to be encountered in the maintenance of this Action that would preclude its maintenance as a class action.

75.    Defendant's failure to implement an adequate recall for the Products arises out of a common omission or failure to act, which has a uniform effect on Plaintiff and all Class Members. Plaintiff seeks preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendant to stop its unlawful conduct.

76.    Defendant implemented uniform procedures relating to the Recall, which resulted in uniform damage to Plaintiff and Class Members. As a result, Defendant has acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

77.    Because Plaintiff seeks injunctive and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.

### FIRST CAUSE OF ACTION
### Breach of the Implied Warranties

78.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

79.    Defendant is and was at all relevant times a merchant involved in the

manufacturing, distributing, warranting, and/or selling of the Products.

80.     The Products were and are, at all relevant times, a "good" within the relevant laws.  Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

81.     Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Product to be used by Plaintiff and Class Members.

82.     Defendant provided Plaintiff and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which the Product was used and sold and was not otherwise injurious to consumers, that the Product would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its Warranty Policy.  These implied warranties became part of the basis of the bargain between Plaintiff and Class Members and Defendant.

83.     However, at the time of delivery, Defendant breached the implied warranties because the Product is not fit for its ordinary purpose of providing a reasonably safe product that is suitable for users because, *inter alia*, the Product contains the Defect rendering the Product unsafe and unsuitable for users, and unreasonably dangerous.  Therefore, the Product is not fit for its particular purpose.

84.     As alleged herein, Plaintiff was forced to completely discontinue his use of the Product shortly after his purchase when the Defect was discovered and publicized.

85.     The aforementioned problems associated with the Products constitute safety risks, such that the Product is not safe nor suitable for use, and therefore, there is a breach of the implied warranty of merchantability.

86.     Moreover, due to the inadequate and unfair nature of the Recall, it is not required and would be futile for Plaintiff to provide Defendant further opportunity to cure its breach.

87.     Plaintiff and Class Members have had sufficient direct dealings with

either Defendant or one of their authorized retailers, representatives, and agents to establish privity of contract between Defendant, on the one hand, and Plaintiff and each Class Member, on the other hand.

88.     Alternatively, privity is not required because Plaintiff and each of the Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers.  The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranties provided by Defendant.  Defendant's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Products.

89.     More specifically, Defendant's manifest intent was that its warranties apply to Plaintiff and Class Members as third-party beneficiaries.  Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Products and the warranties.

90.     Defendant impliedly warranted that the Product is safe, suitable for transport, of merchantable quality and fit for its intended purpose.  These implied warranties included, among other things: (i) a warranty that the Product manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to use as a transportable cooler; (ii) a warranty that the Product would be fit for its intended use while the Product is being used; and (iii) a warranty that the Product would conform to all of the promises and affirmations of fact on the Product's label and online advertising.

91.     Contrary to the applicable implied warranties, the Product, at the time of sale and thereafter, was and is not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a reasonably reliable and safe child product.  Instead, the Product contains a defective design and/or manufacture, as alleged herein.  As a result of the Defect, the Product fails to conform with the promises or affirmations of fact on its label and online advertising.

92.     Defendant failed to adequately warn Plaintiff and Class Members that the

Products contained the Defect, was not safe or suitable for use and could cause serious injury from regular use.

93.    Defendant breached the implied warranties because the Product was and is sold with the Defect, which prevents the Product from even the most basic degree of fitness for ordinary use as a reliable and safe transportable cooler.

94.    Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

95.    Plaintiff's inability to use his Cooler for its intended purpose, resulting from the fact that the Cooler did not meet the most basic degree of fitness for providing a safe and transportable cooler, renders any attempts to limit or disclaim damages substantively unconscionable.

96.    The limitations contained in the warranty are unconscionable and inadequate to protect Plaintiff and Class Members.  Plaintiff and Class Members had no meaningful choice in determining the terms of which unreasonably favored Defendant, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Products.  A gross disparity in bargaining power existed between Defendant and Plaintiff and the Class Members, and Defendant knew or should have known that the Products were defective at the time of sale and would fail before their useful life.

97.    Plaintiff's inability to view Defendant's purported disclaimers prior to his purchase, along with their inability to negotiate the terms or make a different choice at the time of his purchase, renders any disclaimers procedurally unconscionable.  The unavailability of additional warranty coverage from Defendant further demonstrates the disclaimer of implied warranties is procedurally unconscionable.

98.    Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing a safe and transportable cooler.  Instead, the Products suffered, and continue to suffer, from the Defect as alleged herein.

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

99.    Defendant's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

100.    As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## SECOND CAUSE OF ACTION
### Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*

101.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

102.    Plaintiff and Class Members are "buyers" as that term is defined in California Civil Code § 1791(b).

103.    The Products are "consumer goods" as that term is defined in California Civil Code § 1791(a).

104.    At all relevant times, Defendant was the "manufacturer, distributor, warrantor and/or seller" of the Products within the meaning of California Civil Code § 1791.

105.    Defendant provided Plaintiff and Class Members with express warranties that cover "defect[s] in materials or workmanship during the warranty period." If such a defect is discovered, Defendant warrants that it "will, at [its] discretion, repair or replace" the Product.

106.    As detailed above, Defendant breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Defendant made about the Products, by failing to truthfully advertise and warrant that the Products were safe, free of defect, and fit for their intended purpose. The Defect in the Products existed at the time the Products left Defendant's control and Defendant failed to disclose the existence of the Defect either prior to, at the point of, or following sale

of the Products, including when customers contacted Defendant to inquire about the Products' failures.  Defendant's conduct has rendered the warranties null and caused them to fail of their essential purpose.

107.   Defendant's conduct as complained herein breached applicable warranties and violated the Song-Beverly Consumer Warranty Act.

## THIRD CAUSE OF ACTION
### Violation of the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

108.   Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

109.   Defendant is a "person" as that term is defined in California Civil Code § 1761(c).

110.   Plaintiff and Class Members are "consumers" as that term is defined in California Civil Code § 1761(d).

111.   Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiff and Class Members in a material way in the process of purchasing the Products by failing to disclose the existence of the Defect in the Products and by representing that the Products were safe and fit for their intended purpose of providing safe a safe and transportable method for maintaining food.  These acts and practices violate, at a minimum, the following sections of the CLRA:

    a.    California Civil Code § 1770(a)(2): Misrepresenting the source, sponsorship, approval or certification of goods or services;

    b.    California Civil Code § 1770(a)(5): Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

    c.    California Civil Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

d.    California Civil Code § 1770(a)(9): Advertising goods and services with the intent not to sell them as advertised.

112.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

113.    Throughout the relevant period, Defendant knew or reasonably should have known that the Products included the Defect, which made them unsafe and unfit for their intended purpose.

114.    Defendant was under a duty to Plaintiff and Class Members to disclose the true nature of the Products because:

a.    Defendant was in a superior position to know the true state of facts about the Defect in the Products and the unsafe nature of the Products and their unfitness for their intended purpose;

b.    Plaintiff and Class Members could not reasonably have been expected to learn or discover the Defect or defective nature of the Products and thus that the Products were not in accordance with Defendant's representations;

c.    Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the true state of facts about the Defect or defective nature of the Products; and

d.    Defendant actively concealed and failed to disclose the existence of the Defect in the Products to Plaintiff and the Class.

115.    Defendant knew or should have known about the existence of the Defect in the Products, including that the Defect rendered the Products unsafe.  In failing to disclose the existence of the Defect in the Products, Defendant has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

116.    Plaintiff and Class Members considered the advertised and reputed high-quality and safety of the Product to be material and important when decided to purchase the Products.  The Product's quality (including purportedly being free of defects) and safety are material to the average reasonable consumer.

117.   The misrepresented facts concerning the Products are also material because they concern central functions of the cooler (*e.g.*, the defect-free and safe quality of the cooler and the ability to safely transport it).

118.   Had Defendant disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiff and Class Members would have learned of the true nature of the Products and would have acted differently.  Had Plaintiff and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them. Accordingly, Plaintiff and Class Members overpaid for their Products and did not receive the benefit of their bargain.

119.   Had Defendant truthfully disclosed this information in its advertising and marketing, Plaintiff plausibly would have learned of the existence of the Defect and the true nature of the Products.  Accordingly, Plaintiff and Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

120.   Pursuant to California Civil Code § 1782(a), Plaintiff is providing Defendant with notice of its violations under the CLRA.  Pursuant to California Civil Code § 1782(d), following the thirty-day notice period, Plaintiff will amend this Class Action Complaint to seek damages in addition to the injunctive relief he now seeks under the CLRA.

121.   Plaintiff has attached his Declaration of Venue as <u>Exhibit B</u> to this Class Action Complaint, establishing that this Action has been properly commenced in this District, because a significant portion of the relevant facts occurred in Los Angeles County and other counties in the State of California.

122.   Pursuant to California Civil Code § 1780, Plaintiff seeks an order enjoining Defendant from the unlawful practices described above and a declaration that Defendant's conduct violated the CLRA.

123.   Plaintiff, on behalf of himself and Class Members, seek equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law ("UCL"),
### Cal. Bus. & Prof. Code § 17200, *et seq.*

124.    Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

125.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

126.    Defendant has engaged in "unfair competition" through its conduct, as described herein, including by failing to disclose the existence of the Defect in the Products; by misrepresenting the nature, quality, and character of the Products as safe, free of defect, and fit for their intended purpose; and by violating the CLRA, as described above and in Plaintiff's notice letter sent to Defendant concurrently with the filing of this Complaint.

127.    All of Defendant's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Products, occurred in the course of Defendant's business and were part of a pattern or generalized course of illegal conduct.

128.    Defendant's conduct was fraudulent because Defendant failed to disclose the Defect associated with the Products.  Specifically, Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the Defect, were not safe or suitable for children, and posed a risk of severe injury even when used properly.

129.    Defendant's conduct was unfair because it was specifically designed to and did induce Plaintiff and Class Members to purchase the Products.

130.    Defendant's conduct was deceptive because it was specifically designed to and did induce Plaintiff and Class Members to purchase the Products despite knowing that they contained the dangerous Defect.

131.   Plaintiff and Class Members reasonably and justifiably relied on Defendant's conduct alleged herein.  Had Defendant disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiff and Class Members would have learned of the true nature of the Products and would have acted differently.  Had Plaintiff and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them.  Accordingly, Plaintiff and Class Members overpaid for their Products and did not receive the benefit of their bargain.

132.   Plaintiff plausibly would have learned of the existence of the Defect and the true nature of the Products had Defendant truthfully disclosed this information in its advertising and marketing.  Accordingly, Plaintiff's and Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices

133.   Further, as a result of Defendant's conduct, Plaintiff and Class Members have suffered injury-in-fact, lost money, and potential damage to property, in that they have incurred actual costs to repair and/or replace the Product upon manifestation or discovery of the Defect.

134.   Plaintiff, on behalf of himself and Class Members, seeks equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
**Violation of the California False Advertisement Law ("FAL"),**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

135.   Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

136.   The FAL states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means

whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

137.   All of Defendant's conduct alleged herein, including its failures to disclose and its misrepresentations regarding the nature, quality, and character of the Products, occurred in the course of Defendant's business, took place within the State of California, and constitute deceptive or false advertising in violation of the FAL.

138.   Defendant marketed, advertised, labeled, and represented the Products as merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers.

139.   More specifically, Defendant misrepresented the true nature, quality, and character of the Products by failing to disclose the existence of the Defect and by misrepresenting that the Products were fit for their intended purpose of safely transporting food.

140.   To the contrary, the Products contained the dangerous Defect at the time of purchase, and no reasonable consumer would believe that, in light of the dangerous Defect, that the Products were merchantable or fit for the ordinary purpose for which they were used and sold or were not otherwise injurious to consumers, where Plaintiff and Class Members could not immediately identify the Defect.

141.   At the time it made the misrepresentations, Defendant either knew or should have known about the existence of the Defect in the Products, which rendered them unsafe.  Defendant concealed, omitted, and failed to disclose this information from Plaintiff and Class Members.

142.   Defendant has violated the FAL because the misrepresentations and omissions regarding the Products as set forth herein were material and likely to deceive a reasonable consumer.

143.   The misrepresented facts concerning the Products were also material because they concern central functions of the Products – namely, that the Products are

free of defect, and capable of safely transporting food.

144.   Plaintiff has standing to pursue claims under the FAL as he reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding the Products when selecting and purchasing the Products.  Plaintiff and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.

145.   In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and use of the Products, Plaintiff and Class Members purchased the Products.

146.   Had Defendant disclosed the existence of the Defect in the Products in its advertising and marketing, Plaintiff and Class Members would have learned of the true nature of the Products and would have acted differently.  Had Plaintiff and Class Members known about the true state of facts of the Products, they either would not have purchased the Products, or else would have paid substantially less for them. Accordingly, Plaintiff and Class Members overpaid for their Products and did not receive the benefit of their bargain.

147.   As a direct and proximate result of Defendant's conduct as set forth herein, Defendant has obtained ill-gotten gains and/or profits, including but not limited to money from Plaintiff and Class Members who paid for the Products, which contained the Defect.

148.   Plaintiff, on behalf of himself and Class Members, seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California law.

1

## **PRAYER FOR RELIEF**

2

3

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

4

5

6

A.    Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

7

8

9

10

B.    On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

11

12

13

14

C.    On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

15

16

17

D.    On Plaintiff's Third Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

18

19

20

E.    On Plaintiff's Fourth Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

21

22

23

F.    On Plaintiff's Fifth Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

24

25

G.    On Plaintiff's Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

26

27

H.    Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

28

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: March 28, 2025

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

-and-

**DENLEA & CARTON LLP**
James R. Denlea
Jeffrey I. Carton
Craig M. Cepler
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
ccepler@denleacarton.com

*Counsel for Plaintiffs*

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

# EXHIBIT A

Free shipping on orders $99 and over. Shop now›



 0



# SAFETY ALERTS

We stand behind the quality of our products, and because your safety and satisfaction are our top priority. Please review our safety alerts below:

CAUTION: Be aware of pinch points which may occur on or around handles, latches, hinges, lids, and other moving components of the cooler. Avoid placing hands and fingers where injury or damage can occur. Injuries could occur if the handles, latches, hinges, lid, and other moving components on coolers are not used properly. Use safe practices on latches, handles, hinges when using them. Be aware that loose clothing and jewelry may also be caught in pivot areas of your cooler. Children should be supervised if present when using a cooler. Operate and maintain your cooler so it can be enjoyed for years to come! Thank you for purchasing an IGLOO cooler! Stay safe!

February 13, 2025: Igloo Recalls More Than One Million 90 Quart Rolling Coolers Due to Fingertip Amputation and Crushing Hazards



**Name of Product:**

Igloo 90 Qt. Flip & Tow Rolling Coolers

**Hazard:**

The tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.

**Remedy:**

Replace

**Recall Date:**

February 13, 2025

**Units:**

About 1,060,000 (In addition, about 47,000 in Canada and 23,000 in Mexico)

**Consumer Contact:**

Igloo toll-free at 888-943-5182 from 8 a.m. to 5 p.m. ET Monday through Friday, email at igloo90qt@sedgwick.com, or online at www.igloo90qtrecall.expertinquiry.com or http://www.igloocoolers.com and click on "Recall Information" at the top of the page for more information.

**Recall Details:**

This recall involves Igloo 90 Qt. Flip & Tow Rolling Coolers manufactured prior to January 2024. The date of manufacture is imprinted on the bottom of the cooler in a circular pattern with an arrow pointing to the month of manufacture and the last two digits of the year of manufacture inside the circle.

The recalled coolers have a tow handle. "IGLOO" is printed on the side of the coolers. The coolers were sold in multiple body and lid color combinations, some of which are pictured above. The following cooler models with tow handles are included in the recall. The model number is located on labels affixed to the bottom of the cooler.

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34143 | LATITUDE 90 ROLLER | 07/2021 – 12/2023 |

| 27019 | MAXCOLD LATITUDE 90 ROLLER | 11/2020 – 12/2023 |
|---|---|---|
| | POWERADE | |
| 34202 | MAXCOLD 90 ROLLER | 07/2021 – 12/2023 |
| 34241 | LATITUDE 90 ROLLER MAXCOLD | 07/2021 – 12/2023 |
| 34389 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34424 | LATITUDE 90 ROLLER | 10/2019 – 12/2023 |
| 34488 | LATITUDE 90 ROLLER MAXCOLD | 03/2019 – 12/2023 |
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90 | 11/2019 – 12/2023 |
| | ROLLER MAXCOLD | |
| 34608 | LATITUDE 90 | 12/2019 – 12/2023 |
| | ROLLER MAXCOLD | |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| | MAXCOLD | |
| | MAXCOLD | |

| 34689 | LATITUDE 90 | 03/2020 − 12/2023 |
| | ROLLER | |
| 34724 | MAXCOLD LATITUDE 90 | 09/2020 − 12/2023 |
| | ROLLER | |
| 34734 | LATITUDE 90 ROLLER | 09/2020 − 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 − 12/2023 |
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 − 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 − 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER | 10/2020 − 12/2023 |
| | MAXCOLD | |
| 34789 | MAXCOLD LATITUDE 90 | 11/2020 − 12/2023 |
| | ROLLER | |
| 34799 | LATITUDE 90 ROLLER | 12/2020 − 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 − 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 − 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 − 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 − 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 − 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 − 12/2023 |

| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
|---|---|---|
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 ROLLER | 08/2018 – 12/2023 |
| 49938 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 50680 | MAXCOLD LATITUDE 90 QUART | 09/2023 – 12/2023 |

**Remedy:**

Consumers should immediately stop using the recalled coolers and contact Igloo for a free replacement handle.

**ents/Injuries:**

The firm has received 12 reports of fingertip injuries, including fingertip amputations

The firm has received 12 reports of finger tip injuries, including finger tip amputations, bone fractures, and lacerations.

**Sold At:**

Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.

**Manufacturer(s):**

Igloo Products Corp., of Katy, Texas

**Manufactured In:**

United States

**Recall number:**

25-136

**March 19, 2024**: Igloo® stands behind the quality of our products, holding ourselves to the highest standards. With our customers' safety and satisfaction as our top priority, we are voluntarily recalling the 12 Oz Kids Sipper Bottle (also known as the 12 Oz Youth Sipper Bottle). This recall strictly concerns this specific product due to the sipper component on the lid.





The Igloo® Kids/Youth Sipper Bottle item numbers associated with this product are listed as follows:

Item #00071113

Item #00071114

Item #00071115

Item #00071116

We designed this drinkware style with a lid catered to children, including a sipper component that can be thoroughly cleaned. However, the silicone sipper component on the lid can pose a potential choking hazard. We are working to provide customers with a replacement or reimbursement option.

**Consumers should immediately take the recalled bottles away from children, stop using them and contact Igloo to receive a replacement bottle or refund.**

Consumers should destroy the silicone spout by removing the silicone spout and cutting it into two separate pieces down the center.

Consumers should then take a photo of the spout in two separate pieces, then discard the two pieces in the trash.

Consumers should submit a photo of the spout in two separate pieces to customerservice@shop.igloocoolers.com to receive a refund in the form of a $15 online store credit, $15 gift card to be mailed to consumers, or a replacement bottle.

If consumers have the original purchase receipt, they can submit a photo of the receipt along with a photo of the destroyed bottle for a full refund in the form of the original method of payment

Consumers who purchased the recalled bottles at Rural King must contact Igloo to receive a replacement bottle, or refund in the form of a $15 credit to purchase another product at igloocoolers.com or the Igloo company store in Texas or a $15 gift card. Customers who purchased at Academy Sports + Outdoors can also return the product tly to the store for a full refund in the form of the original method of payment, $15 ard or store credit.

*Consumer Contact: Igloo at 800-273-7024 from 8 a.m. to 5 p.m. PT Monday through Friday, email at customerservice@shop.igloocoolers.com or online at www.igloocoolers.com/recalls or www.igloocoolers.com and click on "Recalls" at the bottom of the page for more information.*

We sincerely apologize for any concern or inconvenience this may have caused. Our goal is to serve our customers and provide the best products that everyone can enjoy.

**March 8, 2019**: We are voluntarily recalling the Igloo® Marine Elite coolers. This recall concerns only those Igloo® Marine Elite coolers with stainless-steel ability to lock latches sold under the item numbers listed below:



Igloo® Marine Elite 54 quart; Item #00049374

Igloo® Marine Elite 72 quart; Item #00049375

Igloo® Marine Elite 94 quart; Item #00049574

Igloo® Marine Elite 110 quart; Item #00034108

Igloo® Marine Elite 150 quart; Item #00049573

Igloo® Lockable Latch; Item #00020087

It is possible that the stainless-steel latch could inadvertently close where the cooler cannot be forced opened from the inside. We are working closely with our distributors to send customers a free latch-cement kit that you can use to easily and safely switch out the current latch. If you haven't received a kit, you can contact us toll free at 1(800)-273-7024 to see if the free

latch–replacement kit has already been mailed to you. Once removed, please discard the old stainless–steel latches.

About Us                                                                              ⌄

Help                                                                                  ⌄

Where to Buy                                                                          ⌄

Legal                                                                                 ⌄

*Contiguous U.S. only with Standard Shipping Rates.

© Igloo Products Corp. 2025



EXHIBIT B

1
2
3
4
5

**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:    mdb@kuzykclassactions.com

6
7
8
9
10
11
12
13

**DENLEA & CARTON LLP**
James R. Denlea *(pro hac vice pending)*
Jeffrey I. Carton *(pro hac vice pending)*
Craig M. Cepler *(pro hac vice)*
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
*Email: jdenlea@denleacarton.com*
*Email: jcarton@denleacarton.com*
*Email: ccepler@denleacarton.com*
Tel.:    (914) 331-0100
Fax:    (914) 331-0105

14

*Counsel for Plaintiff and the Proposed Class*

15
16
17

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

18
19
20
21
22
23
24
25

| | |
|---|---|
| **ROBERT CASTELLANO, on behalf of himself and all others similarly situated,**<br><br>            **Plaintiff,**<br><br>    **v.**<br><br>**IGLOO PRODUCTS CORP.,**<br><br>            **Defendant.** | **CASE NO.:**<br><br>**CLASS ACTION**<br><br>**CLRA VENUE DECLARATION OF ROBERT CASTELLANO PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

26
27
28

I, Robert Castellano, declare as follows:

1.      I am the Plaintiff in the above-captioned action.

2.      I have personal knowledge of the facts stated here, if called upon to do so, could competently testify to them.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumer Legal Remedies Act, California Civil Code section 1750 et seq.

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      Defendant regularly conducts business in the State of California.

6.      A substantial part of the conduct, representations, and omissions giving rise to the violations of law alleged herein occurred in this District.

7.      I reside in San Pedro, California, located within this judicial District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of March, 2025, in San Pedro, California.

DocuSigned by:

ROBERT CASTELLANO